FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 2 6 2016

JAMES N. HATTEN, Clerk

By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF GEORGIA, <br><br> Plaintiffs, <br><br> v. <br><br> LAPTOP & DESKTOP REPAIR, LLC, a Nevada limited liability company, also d/b/a cashforiphones.com, cashforlaptops.com, ecyclebest.com, smartphonetraders.com, sell-your-cell.com; and VADIM OLEGOVICH KRUCHININ, also a/k/a Vadim Kruchin, David Kruchin, David Vadim Kruchin, Dave Kruch, as the owner and an officer of Defendant Laptop & Desktop Repair, LLC, <br><br> Defendants. | Case No. <br> **1: 16 - CV - 3591** <br><br> FILED UNDER SEAL |

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

Plaintiffs, the Federal Trade Commission ("FTC") and the State of Georgia

("State of Georgia"), for their Complaint allege:

### SUMMARY OF THE CASE

1.     Since at least 2011, Laptop & Desktop Repair, LLC ("LDR" or "the

Company") has operated numerous websites that promise to pay consumers "top

dollar" for used electronic devices, such as smartphones, laptops, and tablets. To get a purchase quote instantly, consumers enter the make and model, and complete a short checklist about the condition of their devices. LDR outlines its process in four short steps:



2.     While LDR's websites differ, many include specific guarantees that (a) "customers can expect to receive the exact amount we quote in the shortest time possible"; (b) consumers will "[r]eceive the cash promised in your quote"; and (c) LDR "will pay you as soon as we confirm the condition of your [device] and payout amount...."

3.     Despite representations that they will receive a quoted amount for their devices, consumers often discover, after mailing their devices to the Company, that LDR typically pays only a small fraction of the quote.

4.     Consumers who wish to reject the significantly lower amount offered by the company and get their devices returned often find it extremely difficult to contact LDR. The Company routinely refuses to address customer concerns by e-

mail. When consumers call, LDR regularly either hangs up or places them on hold for lengthy periods.

5.    Very few consumers who succeed in reaching LDR by telephone find the Company willing to honor its original quotes or to return their devices.

6.    LDR generally (a) refuses to pay consumers more than a small percentage of the quoted amount, often as little as three to ten percent of the original quote, and (b) avoids returning devices to consumers who wish to reject LDR's lower revised offer, so that the Company can resell these devices for a profit.

7.    LDR also incentivizes its employees, with bonuses or threats of termination, to follow these guidelines and to keep Company's payouts far below the quoted amount and returns to a minimum.

8.    Because of its deceptive business practices, LDR has reaped millions of dollars from consumers in this district and throughout the United States by pulling a classic "bait and switch" on those who attempt to sell their devices to the Company.

9.    The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief; the appointment of a receiver; rescission or reformation of contracts; restitution; the refund of monies paid;

3

disgorgement of ill-gotten monies; and other appropriate equitable relief for acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

10. The State of Georgia, by and through its Attorney General, Samuel S. Olens, brings this action under Georgia's Fair Business Practices Act ("FBPA"), O.C.G.A. §§ 10-1-390 through 10-1-408, to obtain temporary, preliminary, and permanent injunctive relief; monetary relief by way of civil penalties, restitution to persons adversely affected by the actions complained of herein, and other relief as the Court deems just and equitable, including the disgorgement of ill-gotten monies. The FBPA is intended to protect consumers and legitimate business enterprises from "unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.C.G.A. § 10-1-391(a).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the FTC's claims pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

12. This Court has supplemental jurisdiction over the State of Georgia's claims for violations of the FBPA pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the claims brought under federal law that they form part of the same case or controversy, and because those claims arise out of the same

4

transactions or occurrences as the claims brought pursuant to 15 U.S.C. §§ 45(a) and 53(b).

13.     Venue is proper in this district under 28 U.S.C. § 1391 (b) (2) and 15 U.S.C. § 53(b).

## PLAINTIFFS

14.     Plaintiff Federal Trade Commission ("FTC") is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41–58.

15.     The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce.

16.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refunds of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a) (2) (A).

17.     The State of Georgia, by and through its Attorney General, Samuel S. Olens, is authorized to initiate federal district court proceedings to implement the provisions of the FBPA and to secure such relief as the court deems just and equitable, including, but not limited to, injunctive relief, restitution, and the disgorgement of ill-gotten monies. O.C.G.A. §§ 10-1-390 through 10-1-408.

5

**DEFENDANTS**

18.     Defendant Laptop & Desktop Repair, LLC, a Nevada limited-liability company with its principal place of business in Sparks, Washoe County, Nevada, has transacted business in this district and throughout the United States, including in the state of Georgia. LDR does business under various names that include, but are not limited to, ecyclebest.com, smartphonetraders.com, cellphonecity.com, laptopaid.com, laptopheaven.com, laptopsintocash.com, laptopzyx.com, pei-jian.com, ecyclewireless.com, iphonepartspro.com, ecyclepawnbrokers.com, sell-your-cell.com. The Company also does business using various "cash for-" websites, including cashforiphones.com, cashforapples.com, cashforberrys.com, cashforprinters.com, cashforipads.com, and cashforlaptops.com. LDR also has done business using the names "The Gadget Buying Company" and "LDR LLC."

19.     Defendant Vadim Olegovich Kruchinin, also known as Vadim Kruchin, David Kruchin, David Vadim Kruchin, and Dave Kruch, is the owner, President/CEO, and managing member of Laptop & Desktop Repair, LLC. At all times material to this Complaint, acting alone or in concert with others, he formulated, directed, controlled, had authority to control, or participated in the acts and practices of LDR, including the acts and practices alleged in this Complaint. Mr. Kruchinin resides in Reno, Washoe County, Nevada, and has transacted

business in this district and throughout the United States, including in the state of Georgia.

## COMMERCE

20.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and as "trade" and "commerce" are defined in Georgia Code Section 10-1-392 (28).

## DEFENDANTS' DECEPTIVE ACTS AND PRACTICES

### *LDR's Business*

21.     Since at least 2011, tens of thousands of consumers have sold their used electronic devices, such as smartphones, tablets, and laptops, to LDR through the Company's numerous websites and aliases.

22.     LDR buys used electronic devices from consumers and then repackages, reconditions, repairs, or dismantles the electronic devices for resale at a profit on Internet sites such as eBay.com and Newegg.com, among others.

### *LDR's Deceptive Quotes to Consumers*

23.     LDR induces customers to sell their used devices with promises of high payments and fast, easy, and hassle-free experiences.

24.     Consumers receive purchase offers from LDR through a "price-quote engine" on the Company's websites. LDR requires the consumer simply to input (a) the type of device (e.g., Apple iPhone 6) and (b) whether the device (i) has a

7

cracked screen or (ii) a bad battery or (iii) will not power on. LDR's websites often represent that, by inputting this information, "[i]n less than a minute, [consumers] will know the true value" of their devices. Once this information is submitted, the Company's website instantly generates a purchase quote (the "Quote").

25.     LDR's representations often lead consumers to believe that the Quote is the amount that they will receive. For example, LDR has promised that consumers will "[r]eceive the cash promised in your quote" or "[o]ur customers can expect to receive the exact amount we quote." LDR also tells consumers that it will pay "as soon as we confirm the condition of your [device] and payout amount (via e-mail or telephone)."

26.     LDR often communicates with consumers who accept the Quote, but who do not immediately mail their devices to the Company, by reinforcing that LDR will pay the Quote. For example, LDR has sent consumers e-mails stating "Your payment of $[Quote] awaits!"; "Don't wait too long to get your $[Quote]"; and "Accounting Has Allocated Your Cash Payment."

27.     In truth, LDR's Quotes are merely the "bait" in the Company's "bait and switch" scheme. After a consumer sends a device to the Company, LDR routinely decreases its offer to just a small percentage of the Quote (the "Revised Offer"), often only three to ten percent of the Quote, despite the Company's

8

express promise that "[o]ur customers can expect to receive the exact amount we quote…."

### *LDR's Misrepresentations About Consumers' Ability to Reject the Company's Revised Offers and Get Their Devices Returned*

28.     LDR represents that a consumer may reject LDR's Revised Offer and get the device returned. To do so, the consumer must telephone LDR's Purchasing Department within a narrow timeframe (usually, three or five days) after LDR e-mails the Revised Offer (the "Rejection Period").

29.     In truth, Defendants' offer to return the device is largely illusory. LDR has made it very difficult to speak with its Purchasing Department by telephone during the Rejection Period, so that most consumers are unable to reject the Revised Offer and get their devices back.

30.     For example, LDR typically closes its Purchasing Department on weekends but has counted Saturdays and Sundays as part of the Rejection Period, effectively removing two days from the Rejection Period for many consumers.

31.     LDR ordinarily frustrates consumers' rejection attempts by placing calling consumers on hold for long periods or by disconnecting their calls.

32.     For the small percentage of consumers who are able to reach LDR's Purchasing Department by telephone within the Rejection Period, LDR generally refuses to return devices. In numerous cases, LDR has sought to justify its refusal by misrepresenting that LDR has processed the devices and cannot return them.

33.     In some instances, LDR will negotiate the Revised Offer to prevent

consumers from filing complaints with the FTC or other authorities, but the

Company only slightly increases the amount it will pay.

### *LDR's Deceptive Consummation of Transactions and Resulting Consumer Loss*

34.     Since 2011, consumers have lodged more than 4,000 complaints

against LDR with the FTC, State Attorneys Generals and other state authorities,

and the Better Business Bureau. Several media outlets, including *Good Morning*

*America*, have documented the Company's deceptive business practices.

35.     Through these means, and despite thousands of consumer complaints

of deception and fraud, LDR typically pays consumers much less than the Quote

and will not return devices.

### VIOLATIONS OF THE FTC ACT AND THE FBPA

36.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or

deceptive acts or practices in or affecting commerce."

37.     Section 393(a) of the FBPA, O.C.G.A. §10-1-393(a), prohibits

"[u]nfair or deceptive acts or practices in the conduct of consumer transactions and

consumer acts or practices in trade or commerce."

38.     Misrepresentations or deceptive omissions of material fact constitute

deceptive acts or practices prohibited by Section 5(a) of the FTC Act and Section

393(a) of the FBPA.

## COUNT I

### *Misrepresentations of LDR's Payments for Used Devices*

### *(By Plaintiff FTC)*

39.    In numerous instances in connection with their marketing, promotion, offering to purchase, or purchasing of used electronic devices from consumers, Defendants have represented, directly or indirectly, expressly or by implication, that LDR pays consumers the Quote, or an amount close to the Quote, for their used electronic devices.

40.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 39 of this Complaint, LDR does not pay consumers the Quote or an amount close to the Quote for their used electronic devices.

41.    Therefore, Defendants' representations as set forth in Paragraph 39 of this Complaint are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### *Misrepresentations Concerning Consumers' Ability to Request and Get Their Devices Returned*

### *(By Plaintiff FTC)*

42.    In numerous instances in connection with the marketing, promotion, offering to purchase, or purchasing of used electronic devices from consumers,

Defendants have represented, directly or indirectly, expressly or by implication, that during the Rejection Period consumers will be allowed by the Company to request the return of their devices and, if they do so, LDR will return their devices to them.

43.   In truth and in fact, in numerous instances in which Defendants have made the representation set forth in Paragraph 42 of this Complaint, during the Rejection Period consumers have not been allowed by the Company to request the return of their devices and, consequently, LDR does not return their devices to them.

44.   Therefore, Defendants' representations as set forth in Paragraph 42 of this Complaint are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### *Misrepresentations of LDR's Payments for Used Devices*
### *(By Plaintiff State of Georgia)*

45.   As set forth in Paragraphs 1 through 44 above, which allegations are incorporated as if set forth herein, Defendants have engaged in consumer transactions and consumer acts or practices in the conduct of trade or commerce within the state of Georgia as defined in O.C.G.A. §§ 10-1-392(a)(7), (10), and (28).

46.     Defendants misrepresented the amounts that they would pay for consumers' devices. Defendants' initial offers were reasonably relied upon by consumers in selecting a buyer for their devices.  Had they known the actual or approximate dollar amounts Defendants would pay for their devices, consumers would not have participated in those transactions.

47.     Defendants' acts and practices violate O.C.G.A. § 10-1-393(a), which prohibits unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in the conduct of trade or commerce.

## COUNT IV

### *Misrepresentations Concerning Consumers' Ability to Request and Get Their Devices Returned*

### *(By Plaintiff State of Georgia)*

48.     As set forth in Paragraphs 1 through 47 above, which allegations are incorporated as if set forth herein, Defendants have engaged in consumer transactions and consumer acts or practices in the conduct of trade or commerce within the state of Georgia as defined in Georgia Code Section 10-1-392(a)(7), (10), and (28).

49.     Defendants misrepresented their rejection and return policies and procedures. Defendants' misrepresentations were reasonably relied upon by consumers in selecting a buyer for their devices.  Had they known the actual

rejection and return policies and procedures, consumers would not have participated in those transactions.

50.    Defendants' acts and practices violate Georgia Code Section 10-1-393(a), which prohibits unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in the conduct of trade or commerce.

## CONSUMER INJURY

51.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the FBPA. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

52.    The State of Georgia has conducted an investigation and Attorney General Samuel S. Olens has determined that there is immediate danger to citizens of the state of Georgia and other states through dissipation of assets. O.C.G.A. § 10-1-397(c).

## THIS COURT'S POWER TO GRANT RELIEF

53.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in

the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

54. Georgia Code Sections 10-1-397 and 397.1 authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violation of the FBPA, including injunctive relief, monetary relief by way of restitution to persons adversely affected by the actions complained of herein, and other relief as the Court deems just and equitable, including the disgorgement of ill-gotten monies.

## PRAYER FOR RELIEF

55. Wherefore, Plaintiff FTC, pursuant to Section13(b) of the FTC Act, 15 U.S.C. § 53(b) and the Court's own equitable powers, and Plaintiff State of Georgia pursuant to Georgia Code Section 10-1-397 and as authorized by the Court's equitable powers, request that the Court:

A. Award Plaintiffs such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and the appointment of a receiver;

B.    Enter a permanent injunction to prevent future violations of the FTC Act and the FBPA by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the FBPA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, and;

D.    Award Plaintiffs the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: _Sept 26_ 2016

Respectfully submitted,


DAVID C. SHONKA,
Acting General Counsel


_____
ANNA M. BURNS
Ga. Bar No. 558234
HANS CLAUSEN
Ga. Bar No. 153250
Federal Trade Commission
Southeast Region
225 Peachtree Street, N.E., Suite 1500
Atlanta, GA 30303
Telephone: (404) 656-1350
Facsimile: (404) 656-1379
E-mail: aburns@ftc.gov; hclausen@ftc.gov


Attorneys for Plaintiff

16

FEDERAL TRADE COMMISSION

SAMUEL S. OLENS
Attorney General
State of Georgia
Ga. Bar No. 551540

ANNE S. INFINGER
Deputy Attorney General
Ga. Bar No. 382918
KATHERINE D. SCHUESSLER
Ga. Bar No. 147108
Georgia Department of Law
Consumer Protection Unit
2 Martin Luther King, Jr. Drive, Suite 356
Atlanta, Georgia 30334
Phone: (404) 656-1761
Facsimile: (404) 651-9018
E-mail: kschuessler@law.ga.gov

Attorneys for Plaintiff
STATE OF GEORGIA