## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF GEORGIA, <br><br> Plaintiffs, <br><br> v. <br><br> LAPTOP & DESKTOP REPAIR, LLC, a Nevada limited liability company, also d/b/a cashforiphones.com, cashforlaptops.com, ecyclebest.com, smartphonetraders.com, sell-your-cell.com; and VADIM OLEGOVICH KRUCHININ, also a/k/a Vadim Kruchin, David Kruchin, David Vadim Kruchin, Dave Kruch, as the owner and an officer of Defendant Laptop & Desktop Repair, LLC, <br><br> Defendants. | Case No. 1:16-CV-3591-AT |

**FINAL REPORT BY RECEIVER AND MOTION FOR AN ORDER (A) APPROVING ACCOUNTING; (B) AUTHORIZING RESERVE, PAYMENT OF ADMINISTRATIVE EXPENSES AND PROFESSIONAL FEES AND COSTS AND FINAL DISBURSEMENTS; (C) AUTHORIZING THE ABANDONMENT OF REMAINING RECORDS, ASSETS AND 401K PLAN; AND (D) DISCHARGING AND RELEASING THE RECEIVER AND CLOSING RECEIVERSHIP AND MEMORANDUM IN SUPPORT THEREOF**

**COMES NOW**, Hays Financial Consulting LLC and S. Gregory Hays, the

duly authorized and acting Receiver herein (collectively, the "**Receiver**"), by and

through counsel, and herewith makes and files this *Final Report by Receiver and Motion for an Order (a) Approving Accounting; (b) Authorizing Reserve, Payment of Administrative Expenses and Professional Fees and Costs, and Final Disbursements; (c) Authorizing the Abandonment of Remaining Records, Assets and 401K Plan; and (d) Discharging and Releasing Receiver and Closing Receivership and Memorandum in Support Thereof* (the "**Final Report**" and "**Motion**") and shows as follows:

## I.    SUMMARY

1.    The Receiver is pleased to report to the Court that the activities of the Receivership have substantially concluded, the duties, responsibilities and obligations of the Receiver have been substantially performed, and the grounds for the Receivership no longer exist. After performing certain additional tasks and making certain payments as set forth herein, the Receiver proposes to transfer to the Federal Trade Commission ("**FTC**") the remaining funds held by the Receiver that are property of the Receivership as further set forth herein so that the FTC, in turn, may distribute such funds to consumers harmed by the Defendants' activities. The Receiver accordingly requests an Order: a) approving the Final Report; b) authorizing the Receiver to: i) complete the administration of the Receivership; ii) maintain a reserve, pay administrative expenses and professional fees and costs, and make final disbursements, and iii) abandon remaining assets, records and a small

2

401K Plan established by Defendant LDR; and c) discharging and releasing the Receiver, exonerating the Receiver's bond, and closing the Receivership.

## II.    FINAL REPORT

### A.    Procedural Background

2.    The Receiver was initially appointed on September 26, 2016, in the Temporary Restraining Order (the "**TRO**") [ECF No. 9] entered in the above-captioned case.  This Court appointed the Receiver for the business activities of the receivership (the "**Receivership**") defendant Laptop & Desktop Repair, LLC ("**Receivership Defendant**") that consisted of the purchase and resale of smartphones and laptop equipment.

3.    The Court reappointed the Receiver in the Stipulated Preliminary Injunction Order (the "**Preliminary Injunction**") entered on October 5, 2016 [ECF No. 14].  Both the TRO and Preliminary Injunction (the "**Receivership Orders**") authorize the Receiver to, among other conduct, marshal and seek to sell the assets of the Receivership Defendant.

4.    On May 19, 2017, this Court entered its Default Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendants Laptop & Desktop Repair, LLC and Vadim Kruchinin (the "**Final Judgment**") [ECF No. 47].  Pursuant to Article V of the Final Judgment, the Receiver was directed to complete the duties of the Receiver within 120 days of the date on which the Final Judgment

was entered. The Court subsequently entered an Order Granting Receiver's Motion to Further Extend Receiver's Term To and Through March 15, 2018, (the **"Extension Order"**) [ECF No. 56], incident to which the term of the Receiver was further extended to and through March 15, 2018. A further Order was entered extending the Receiver's term to and through April 30, 2018 [ECF 58] and a final Order was entered extending the Receiver's term to and through May 31, 2018 [ECF 60].

### B.    Receivership Activities

5.    The Receivership Orders authorized and direct the Receiver, among other things, to:

a.  Assume full control of the Receivership Defendant, *see* Preliminary Injunction, XI(A);

b.  Take custody, control and possession of all assets of the Receivership Defendant, *see* Preliminary Injunction, XI(B); and

c.  Liquidate any securities, commodities, or inventory owned by or for the benefit of the Receivership Defendant, *see* Preliminary Injunction, XI(C)(9).

6.    As authorized in the Receivership Orders, the Receiver employed the Law Offices of Henry F. Sewell, Jr., LLC of Atlanta, Georgia to serve as attorneys

for the Receiver and the firm of Hays Financial Consulting, LLC also acted as Financial Advisors to the Receiver.

7. Consistent with the responsibilities of the Receiver pursuant to the Receivership Orders, Receiver prepared and filed two separate motions to expand the Receivership [ECF Nos. 23 and 38] that were granted by the Court [ECF Nos. 28 and 45] to include Coney Island 84, Inc. and real property owned by Vadim Kruchinin located at 5390 Vista Ridge Way, Reno, Nevada 89523.

8. Since the appointment of the Receiver, the Receiver and the professionals engaged by the Receiver have worked diligently to take control of the assets of the Receivership and marshal and liquidate these assets. The Receiver's investigation of the affairs of the Receivership Defendant was hampered by the condition of the records of the Receivership Defendant. Based upon a review and analysis of the documents obtained by the Receiver, the Receiver completed an accounting of the inventory of the Receivership Defendant and believes that the Receiver has now accounted for and liquidated the assets of the Receivership Defendant. Incident to the liquidation of such assets, the Receiver filed two separate motions to sell assets [ECF Nos. 36 and 48] that were granted by the Court [ECF Nos. 44 and 50]. The Receiver has also reviewed certain claims and consulted with the FTC with regard to a plan to conclude the administration of the Receivership.

9.      For the past year, the primary delay in closing this case has been the return of the "Caged Inventory" to consumers pursuant to the Order Granting Receiver's Motion for Approval of Private Sale of Real and Personal Property [ECF No. 36] (the "**Warehouse Sale Order**").      Pursuant to the terms of the Warehouse Sale Order, the Receiver was directed to work with the purchaser of inventory from the Receiver (the "**Purchaser**") to return items stored in a separate cage in the Receivership Defendants' warehouse.  This inventory, which had been received by the Receivership Defendants prior to the Receiver's appointment but had not been processed by the Receivership Defendants, has been consistently referred to during this case as the "Caged Inventory".  Pursuant to the terms of the Warehouse Sale Order, the Receiver was directed to contact each affected consumer and offer such consumer the opportunity to sell their item to the Purchaser or to have their item returned to them. The form of the letter sent to such consumers was approved to this Court.

10.      A total of 1,011 affected consumers were contacted, of which 680 were resolved either through the return of or the payment for their device. The process of returning the Caged Inventory was complicated and delayed because many addresses turned out to be invalid and the Receiver has had to expend additional time tracking down affected consumers.  Although 331 consumers did not, and still have not, responded, the Receiver does not believe any further delay in closing the case is

6

warranted and proposes to resolve the issues related to these consumers as set forth below.

11.   The Receivership Defendants had less than $30,000 in cash at the time of the appointment of the Receiver.  The Receiver, by expanding the Receivership to include Coney Island 84, Inc., which owned the warehouse from which the Receivership Defendant operated as well as Defendant Kruchinin's personal residence, was able to generate total recoveries of $958,000 in this case.  In addition, by quickly halting LDR's business activities, obtaining the consent of the LDR's lenders to return all unopened packages, arranging with the US Postal Service, UPS and Federal Express for the rejection of future consumer devices and establishing a process to return the "Caged Inventory", the Receiver was able to fully compensate over three thousand consumers by either returning their property to them or paying them an agreed upon amount for their property.

12.   **Final Accounting**. Attached hereto as Exhibit "A" and incorporated herein by reference is an accounting related to the Receivership as of the date of this Motion. This accounting includes all asset recoveries and proceeds from the liquidation of the assets of the Receivership.

13.   **Caged Inventory Payment:** As noted above, 331 consumers ("**Unclaimed Caged Inventory Consumers**") did not respond to the Receiver's offer to sell their item(s) in the Caged Inventory to the Purchaser or to have their

item returned to them ("Unclaimed Caged Inventory").[1] The sum of the Purchaser's initial offer to the Unresolved Caged Inventory Consumers is $7,900. Pursuant to the Warehouse Sale Order, the Purchaser is in the process of purchasing the Unclaimed Caged Inventory from the Receiver for a price equal to 90% of the amount initially offered to the consumer by the Purchaser which will be paid to the Receivership Estate less certain shipping costs which the Purchaser is authorized to charge back to the Receivership. The Receiver anticipates netting approximately $3,600 from the purchase of these items from the Receivership Estate. A copy of the list of the Unresolved Caged Inventory Consumers and the initial amounts offered has been provided to the Plaintiff FTC but has not been filed with this Court due to privacy issues.

14. **Secured Creditors and Lienholders:** With the exception of certain tax liens, which are addressed below, the Receiver has satisfied all liens of record existing with respect to the assets in the Receiverships. Indeed, through negotiations with secured creditors and challenges to the validity of certain asserted liens, the Receiver was able to reduce the total amount of asserted lien claims by over $300,000.

---

[1] The Receiver continues to receive occasional calls from the Unresolved Caged Inventory Consumers regarding their devices and has been working to resolve their claim with the Purchasers.

15.     **Proposed Distribution Plan for Available Funds**. After satisfying all lien claims, the Receiver is currently holding $423,663 to be disbursed after the approval of this Final Report and the Final Fee Application (as defined below) filed contemporaneously herewith. The Receiver proposes to distribute these funds as follows:

A.      **State and Federal Payroll Taxes**. Payroll tax claims have been asserted against Defendant Laptop & Desktop Repair LLC ("LDR") for unpaid payroll taxes incurred prior to the appointment of the Receiver. The amount owed to Internal Revenue Service for federal payroll taxes is $16,937.98. The amount owed to the State of Nevada is $5,675. In addition, Nevada has assessed Modified Business Tax of $283. The Receiver has verified the calculation of these claims and requests that he be permitted to pay the total amount owed of $22,895.98 plus any additional amount which may be necessary to fully discharge and settle such tax claims provided that the Receiver will pay only the principal amount due and not any interest or penalties.

B.      **Unclaimed Checks Issued to Consumers**. The Receiver is holding funds in the amount of $21,995 related to 523 unclaimed checks issued to consumers which were issued in September 2016 , just prior to the appointment of the Receiver but which did not clear LDR's bank accounts prior to the Receiver freezing those accounts (the "**Checks**"). The Checks were issued, but did not clear prior to the freeze, in connection with consumer sales of equipment to the Defendants.  To the best of the knowledge, information and belief of the Receiver, these consumers sold their item but were not compensated and the Receiver has concluded that this is the only method of compensating these consumers for their loss.  The Receiver proposes and hereby seeks authority to reissue the Checks to the respective consumers. In connection therewith: (a) all reissued Checks shall be required to be negotiated within thirty (30) days of the date of issuance (the "**Stale Date Deadline**"), and (b) checks returned without a valid forwarding address

or checks uncashed after the Stale Date Deadline will be deemed void. The Receiver proposes to turn over to the FTC the proceeds of any reissued Checks that are uncashed after the Stale Date Deadline. The Receiver has provided a list of the Checks and payors to the Plaintiff FTC and will produce a copy to the Court upon request. The Receiver did not want to file this list on the public record due to privacy concerns.

  **C.**   **Nevada Labor Commissioner Claim:**   The Labor Commission of Nevada (the "Labor Commissioner") has asserted claims in the amount of $14,528 against the Receiver related to wage claims asserted with the Office of the Labor Commission for Nevada. However, of this amount, $11,413.50 is comprised of penalties and only $3,114.50 is an actual wage claims. The Receiver proposes to pay the Labor Commissioner the sum of $3,114.50 in satisfaction of its claim.

  **D.**   **Paper Check Wages**. At the time the Receiver was appointed and took possession and control of the Receivership Bank Accounts, LDR was in the process of completing a payroll. Although that process was mostly completed and most of the LDR employees received their paychecks through a direct deposit into their bank accounts, five employees who received their wages though a physical check did not receive payment of this payroll as their checks were not honored by the bank due to the account freeze. The Receiver proposes to pay the five employees a total of $5,277 plus the employer tax obligation representing their missed payroll. The Receiver has provided a list of these employees and the amount of their wages to the Plaintiff FTC and will produce a copy to the Court upon request. The Receiver did not want to file this list on the public record due to privacy concerns. In connection therewith: (a) all payments issued by the Receiver shall be required to be negotiated within "Stale Date Deadline", and (b) payments returned without a valid forwarding address or checks uncashed after the Stale Date Deadline will be deemed void. The Receiver proposes to turn over to the FTC the proceeds of any payments that are uncashed after the Stale Date Deadline.

16. Accordingly, the Receiver proposes to pay $53,282 to the claimants listed above (collectively and individually, the "Distributions").

17. **Claims which will receive no distribution.** The primary purpose of this Receivership was to protect the interests of consumers defrauded by the actions of the Defendants and their principals. The Receiver respectfully submits that this overarching goal has been achieved. However, due to limited funds and resources, and the importance of protecting consumers, there are specific groups of unsecured creditors which will not receive any distributions if this Motion is granted. It should be noted that if the Receiver were to go through a claims review process with respect to these claims, a significant portion of any distribution would be required to review, adjust and administer these claims, possibly rendering such an effort impractical and unfeasible. The decision to not pay these claims was made in consultation with the Plaintiff FTC.

A. **Employee Wage Claims.** At the time the Receiver was appointed, LDR has just completed funding a payroll. However, LDR paid its employees two weeks in arrears and because of the closing of LDR, the LDR employees were never paid wages for their last two weeks of work. These wages total $53,985.46 These claims will not be paid. The Receiver has a list of the affected employees and will send a copy of this Motion to these employees.

B. **Miscellaneous Unsecured and Vendor Claims:** Due to limitations of available funds, the Receiver did not conduct any claims reconciliation process for unsecured claims. The Receiver believes, based on the information available to him, that there is approximately $225,000 in accounts payable to vendors of LDR and an additional $500,000 in unsecured loans (mostly credit card debt) incurred by Defendant LDR. These claims will not be paid. The Receiver does have a list of both the vendors and financial institutions owed money on an

unsecured basis and will serve a copy of this Motion upon them.

  C. **Shareholder Claims:** No distributions will be made to any shareholders or owners of any of the Receivership Defendant in this case.

  18. The Receiver estimates that if this distribution plan is approved and if this Court approves the payment of professional fees below, that the amount of remaining funds will be approximately $300,000. Per the relief sought below, these remaining funds will be paid to the Plaintiff FTC which has advised the Receiver that it will establish a victim claim fund to distribute these funds to consumers damaged by the conduct of the Defendants herein.

## III. MOTION TO ESTABLISH RESERVE, REISSUE CHECKS, AND DISBURSE FUNDS

  19. The Receiver and the professionals of the Receiver filed an application on November 29, 2017, seeking compensation in this case for the period between September 26, 2016, through August 31, 2017 [ECF No. 53] and such application was granted by Order of this Court on December 14, 2017 [ECF No. 55]. The approved compensation was paid by the Receiver.

  20. The Receiver and attorneys of the Receiver have incurred additional time and expenses in concluding the administration of this Receivership and will likely incur additional expenses in the future in closing out the Receivership. Contemporaneously with the filing of this Final Report, the Receiver and the professionals of the Receiver are filing a request for approval of compensation and

reimbursement of expenses (the **"Final Fee Application"**). The Receiver is requesting additional compensation in the amount of $34,081.50 and reimbursement of expenses in the amount of $647.59. The Receiver's counsel is requesting compensation in the amount of $16,372.50. The Receiver asserts that the requested professional fees: a) have been necessary for the preservation of the Receivership; b) are reasonable; and c ) reflect a 10% to 20% discount of hourly rates that are consistent with the prevailing hourly rates charged in the Atlanta business and legal community.

21.     The Receiver anticipates that additional work will need to be performed even after the entry of an Order approving this Final Report and Motion. For example, the Receiver will incur costs in making the final distribution in this case. Accordingly, the Receiver requests a reserve in the amount of $25,000 (the **"Reserve"**) and the authority to pay such funds as the Receiver determines is appropriate in the sole discretion of the Receiver to pay the Receiver, professionals of the Receiver, or any other parties to wind-down or close the Receivership. Any surplus Reserve remaining after the payment of outstanding fees and expenses shall be turned over to the FTC on or before December 31, 2018.

22.     **Turnover of Remaining Funds to the FTC**. Assuming that this Court approves the Reserve, the compensation and reimbursement of expenses requested in the Final Fee Application, and the payment of the Distributions, the total

remaining funds available in the Receivership would total approximately $300,000.

This amount may change due to interest income incurred, uncashed checks or other

factors that may occur prior to the final distribution of funds from the Receivership.

The Receiver proposes to turnover the funds remaining in the Receivership after

the payment of the Distributions, all fees and expenses of the Receivership, including

the Reserve and the fees and expenses requested in the Final Fee Application to the

FTC in conjunction with the closure of the Receivership.

## IV.   MOTION TO ABANDON RECORDS AND ASSETS, INCLUDING 401K PLAN.

23.    The Receiver is in possession of voluminous records of the

Receivership Defendant in this case that were procured by the Receiver pursuant

to the Receivership Orders. The Receiver asserts that the continued storage and

retention of these documents is unnecessary and burdensome and proposes to

abandon and dispose of same. Also, to the extent the Receiver still holds any

equipment or personal property which has no value, the Receiver requests authority

to abandon same. The Receiver accordingly requests authority to abandon and

dispose of these records and assets.

24.    In addition to these records and assets, LDR maintained a 401(k) plan

(the "401K Plan") as the Plan Sponsor and the sole Plan Administrator ("Plan

Administrator") was Vadim Kruchinin who left the county.  There is no authorized

party to sign on behalf of the Plan Administrator. Paychex, Inc. served as the Plan

Custodian (the "Custodian"). The 401K Plan had an identification number 230966 with had a separate Federal ID number from the Receiverships Estate. The Receiver completed form to terminate the 401K Plan but did not sign as the Plan Administrator. On February 1, 2017 the Custodian terminated the 401K Plan and mailed notices to all participants to withdraw funds from their 401(k) account and most all of the account were closed. Since the Receiver is not an authorized Plan Administrator he has not been able to access information on who is left in the 401K Plan, but from monthly statements is cognizant there remain 8 participants in the 401K Plan, but no funds remain in the 401K Plan due to assessments of costs and fees by the Custodian. The Custodian continued to charge monthly fees to the 401K Plan of $173.00 from the remaining cash and used up all remaining fund in fees. The Receiver had completed appropriate forms for involuntary distributions and for the Custodian to establish separate bank account for all remaining participant's funds; however, the Custodian would not process as the Receiver was not the Plan Administrator. The Receiver Estate has no authority over the 401K Plan and is not the responsible appropriate party to file Form 5500 or other tax returns that may be due. The Receiver requests authority to abandon any interest of the Receiver Estate in the 401K Plan. The Receiver is advised and informed that if this happens and the 401K Plan is abandoned, it will become an "orphan" plan under applicable laws

pursuant to which the Custodian will be required to file the appropriate tax forms and close the 401K Plan.

## V.     MOTION TO CLOSE RECEIVERSHIP, DISCHARGE AND RELEASE RECEIVER, AND EXONERATE BOND OF RECEIVER

25.     Upon completion of the payment of the Reserve, all professional fees and expenses, the Distribution, and turnover of cash remaining in the Receivership to the FTC, the Receiver will file a report with the Court indicating that such distributions have been made (the "**Report of Distributions**"). The Receiver requests that the Receivership be deemed terminated upon the filing of the Report of Distributions without further order of this Court.

26.     The Receiver requests that, subject to the terms and conditions set forth herein that the Receiver be released and discharged as Receiver in this case and the Receiver's bond be exonerated. The Receiver further requests that the Receiver and the professionals of the Receiver be released and discharged from any and all claims and causes of action which might be brought against the Receiver or any professionals of the Receiver for matters arising from the administration of the assets turned over to the Receiver and, to the extent that any person or entity nevertheless seeks to pursue and claim or action against the Receiver or the professionals of the Receiver arising out of the duties as Receiver, the Receiver requests that this Court retain jurisdiction to hear any such claim.

27.     In order to complete the administration of and close this case, the Receiver requests that this Court enter an Order releasing and discharging the Receiver and any professionals of the Receiver and authorizing and directing the Receiver to do the following:

a) Approve the Final Accounting;

b) Authorize the Receiver to make and pay the Distributions;

c) Establish the Reserve and authorize the Receiver to distribute the Reserve in the sole discretion of the Receiver;

d) Turnover to the FTC the funds remaining in the Receivership after the payment of the Distributions, including the proceeds of any uncashed checks, and any compensation and reimbursement of expenses awarded to the Receiver and his professionals;

e) To abandon the records and assets set forth above;

f) To abandon the 401K Plan; and

g) File a Report of Distributions with this Court certifying that the distributions set forth herein have been made.

WHEREFORE, the Receiver requests that the Court enter an Order, substantially in the form as the proposed Order attached hereto as Exhibit "B" and incorporated herein by reference, that approves the Final Report, grants the Motion and relief requested herein, and grants such other and further relief as may be just

and proper.

Respectfully submitted this 24th day of May, 2018.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver

Law Offices of Henry F. Sewell, Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

# EXHIBIT A

## FINAL ACCOUNTING

Laptop & Desktop Repair LLC
Coney Island 84 Inc.

Recoveries to Date:

| | | |
|---|---|---|
| Arrascada & Arrascada LTD | Trust Account | $8,977 |
| Cash | Cash at Facility | $506 |
| LDR - First Independent Bank | Closed LDR Account | $6,210 |
| LDR - US Bank | Closed LDR Account | $21,658 |
| Angres Trust Account | Trust Account | $9,727 |
| LDR - Wells Fargo | Closed LDR Account | $230 |
| B-Stock Solutions | Accounts Receivable | $6,930 |
| 84 Coney Island, Sparks, NV (Net) | Real Property | $556,609 |
| Inventory & Personal Property | At 84 Coney Island Drive | $200,000 |
| 5390 Vista Ridge, Reno, NV (Net) | Kruchin Real Property | $120,924 |
| Coney Island 84 Bank Account at FIB | Close Acct | $7,589 |
| Rent - 84 Coney Island Drive | Subtenant | $18,650 |
| | | $958,009 |

Expenses to Date:

| | | |
|---|---|---|
| Western Alliance Bank | Personal Property Lien | $200,000 |
| Utilities, Insurance, appraisals, etc. | Paid from Estate Funds | $22,840 |
| Receiver Professionals | Thru Aug 2017 | $310,543 |
| Taxes | Income, Payroll, State, Etc. | $571 |
| Consumer Payments | To be Reimbursed by Pulse | $393 |
| | | $534,346 |

| | |
|---|---|
| Receiver Cash 4/30/18 | $423,663 |

Additional Recoveries:

| | | |
|---|---|---|
| Purchase of Unclaimed Caged Inventory | 90% of amount offered to consumer less shipping costs | $3,651 |

Professional Fees and Other Expenses:

| | | |
|---|---|---|
| Receiver Fees & Expenses | 9/1/17 - 4/30/18 | $34,729 |
| Henry F. Sewell, Jr. LLC Fees & Exp | 9/1/17 - 4/30/18 | $16,373 |
| Holland & Hart LLP | NV Counsel | $1,293 |
| Anticipated Remaining Professional Fees & Expenses (Est) | | $25,000 |
| | | $77,395 |

| | |
|---|---|
| Net Remaining After Administrative Expenses | $349,919 |

Proposed Distributions

| | | |
|---|---|---|
| Outstanding Consumer Checks | 523 Checks (9/1/16 - 9/29/16) | $21,995 |
| Final Employee Payroll | Paper Checks (5 Employees not paid) | $5,277 |
| State of Nevada Lien | Employment Security Div +Penalties | $5,675 |
| State of Nevada | Modified Business Tax | $283 |
| Nevada Labor Commissioner | | $3,115 |
| Internal Revenue Service | Federal Payroll Lien | $16,937 |
| | | $53,282 |

| | |
|---|---|
| Estimated Net to Turn Over to Federal Trade Commission | $296,637 |

**Exhibit B**
**(Proposed Order)**

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF GEORGIA,<br><br>       Plaintiffs,<br><br>  v.<br><br>LAPTOP & DESKTOP REPAIR, LLC, a Nevada limited liability company, also d/b/a cashforiphones.com, cashforlaptops.com, ecyclebest.com, smartphonetraders.com, sell-your-cell.com; and VADIM OLEGOVICH KRUCHININ, also a/k/a Vadim Kruchin, David Kruchin, David Vadim Kruchin, Dave Kruch, as the owner and an officer of Defendant Laptop & Desktop Repair, LLC,<br><br>       Defendants. | Case No. 1:16-CV-3591-AT |

## ORDER APPROVING FINAL REPORT BY RECEIVER AND MOTION FOR AN ORDER (A) APPROVING ACCOUNTING; (B) AUTHORIZING RESERVE, PAYMENT OF ADMINISTRATIVE EXPENSES AND PROFESSIONAL FEES AND COSTS AND FINAL DISBURSEMENTS; (C) AUTHORIZING THE ABANDONMENT OF REMAINING RECORDS, ASSETS AND 401K PLAN; AND (D) DISCHARGING AND RELEASING THE RECEIVER AND CLOSING RECEIVERSHIP

This matter came before the Court on the *Final Report by Receiver and Motion for an Order (a) Approving Accounting; (b) Authorizing Reserve,*

*Payment of Administrative Expenses and Professional Fees and Costs, and Final Disbursements; (c) Authorizing the Abandonment of Remaining Records and Assets; and (d) Discharging and Releasing Receiver and Closing Receivership and Memorandum in Support Thereof* (the "**Final Report**" and "**Motion**") filed by Hays Financial Consulting LLC and S. Gregory Hays, the duly authorized and acting Receiver herein (collectively, the "**Receiver**").

Following notice to all creditors of the Receivership Defendant[2] known to the Receiver and parties in interest entitled to notice, no objection was filed in opposition to the Final Report or Motion. After thorough consideration of the Motion, the Final Fee Application, the record, facts and circumstances related to the Receivership, this Court finds that the approval of the Final Report and Motion is in the best interests of the Receivership, the creditors of the Receivership Defendant, and all parties in interest. Accordingly, for good cause shown and without the necessity of further notice or hearing, it is hereby ORDERED and ADJUDGED that:

1. Notice of the Final Report and Motion is deemed appropriate and in accordance with the prior orders of this Court.

2. The Motion of the Receiver is granted in its entirety.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Final Report and Motion.

3. <u>Approval of Final Report and Accounting</u>. The Final Report of the Receiver is approved, and all actions and activities taken by or on behalf of the Receiver and all payments made or to be made by the Receiver in connection with the administration of the Receivership are hereby approved and confirmed.

4. <u>Destruction of Records</u>. The Receiver is authorized to abandon and destroy the electronic and paper records of the Receivership Defendant and of any other related entities or businesses related to the Receivership in the possession, custody or control of the Receiver if, within 30 days after service of written notice to the FTC, the Receiver has not been served with a written request by the FTC for the records or a subpoena by a law enforcement agency. If during such 30-day period, the Receiver is served with a written request for the records by the FTC or subpoena by a law enforcement agency, the Receiver shall be authorized to turn over the original records to the FTC or a law enforcement agency in response to the request or subpoena.

5. <u>Abandonment of Assets</u>. All assets not distributed or otherwise administered by the Receiver as of the closing of the Receivership are deemed abandoned. Abandoned assets may be destroyed or discarded, without regard to title or value, in the sole and absolute discretion of the Receiver.

6. <u>Abandonment of 401K Plan</u>. The 401K Plan as identified above is deemed abandoned and the Receiver is authorized to take any and all actions and

execute such forms and documents as may be necessary to effectuate such abandonment.

7. Discharge. Neither the Receiver nor any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver shall have any liability to any person or entity for any action taken in good faith in connection with carrying out the administration of this Receivership and the exercise of any powers, duties and responsibilities in connection therewith. Effective upon the completion of the final distribution of funds maintained in the Receivership and filing of the Report of Distributions, the Receiver and any agents, employees, members, officers, independent contractors, attorneys and representatives of the Receiver are fully: (a) discharged of all duties, responsibilities, obligations, and liabilities in connection with the administration of the Receivership and from any other obligation imposed by the Receivership Orders or any other orders of the Court; (b) released from any and all claims and liabilities arising out of and/or pertaining to the Receivership; and (c) relieved of all liabilities, duties and responsibilities pertaining to the Receivership.

8. Administrative Fees and Expenses. All receivership administrative fees and expenses incurred in this Receivership proceeding, including the fees and expenses of the Receiver and those of any professionals of the Receiver

4

incurred and paid or to be paid in connection with the Receivership, are hereby approved, and all administrative expenses and professionals' fees and expenses incurred from the date of the entry of the Receivership Orders through the closing of the Receivership and the discharge of the Receiver are hereby approved and authorized to be paid from assets of the Receivership.

9. Establishment of Reserve for Closing Tasks. The Receiver is authorized to: a) maintain a reserve from assets of the Receivership in the amount of $25,000 (the "**Reserve**") and to make payments from the Reserve at the sole discretion of the Receiver to pay the Receiver, professionals of the Receiver, or any other parties to wind-down or close the Receivership. Any surplus Reserve remaining after the payment of outstanding fees and expenses shall be turned over to the FTC.

10. Payment of Distributions. The Receiver is authorized to pay the Distributions as defined in the Motion.   In connection therewith all payments shall be required to be negotiated within thirty (30) days of the date of issuance (the "**Stale Date Deadline**"), and checks returned without a valid forwarding address or checks uncashed after the Stale Date Deadline are hereby deemed void. The Receiver shall turn over to the FTC the proceeds of any payments that are not negotiated after the Stale Date Deadline and the unclaimed balance of amounts paid for the Unclaimed Caged Inventory.

11. <u>Final Distribution</u>. The Receiver is hereby authorized to make a final distribution of the Receivership assets remaining after the payment of the Distributions by turning over the remaining assets to the FTC.

12. <u>Bond Exoneration</u>. The Receiver's bond shall be exonerated effective upon the completion of the Receiver's payment of administrative expenses and final distribution of funds as provided herein.

13. <u>Outstanding Tax Returns.</u> The Receiver is not responsible and has no liability for any tax returns for or related to the Receivership or the Receivership Defendant.

14. <u>Jurisdiction</u>. This Court shall retain jurisdiction over any and all matters relating to the Receiver and the Receivership, including any matters relating to the distribution of funds received by the Receiver in connection with the obligations of the Receiver or otherwise received after the Receivership is closed.  To the extent that any dispute arises concerning the administration of the Receivership or to the extent that any person or entity seeks to pursue or assert any claim or action against the Receiver or any agent, employee, member, officer, independent contractor, attorney or representative of the Receiver, arising out of or related to this Receivership, the Court shall retain jurisdiction to hear and resolve any such dispute or claim.

15. <u>Notice of Funds Distribution</u>. After the final distribution of funds as ordered by the Court, the Receiver shall file a Report of Distributions. The Receivership shall be deemed closed and terminated upon the filing of the Report of Distributions without further Order of this Court.

IT IS SO ORDERED, this _____ day of _____, 2018.

_____

Judge _____
United States District Court
Northern District of Georgia, Atlanta
Division

## CERTIFICATE OF COMPLIANCE

This is to certify that to the best of my knowledge this document has been prepared with one of the font and point selections approved by the Court in LR 5.1B, pursuant to LR 7. Specifically, the above-mentioned document has been prepared using Times New Roman font, 14 point.

This the 24 day of May, 2018.

LAW OFFICES OF HENRY F. SEWELL JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Counsel for the Receiver

Law Offices of Henry F. Sewell, Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
(404) 926-0053
hsewell@sewellfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION** | ) | |
| **and STATE OF GEORGIA** | ) | |
| | ) | |
| **Plaintiffs.** | ) | **Civil Action File No:** |
| | ) | **1:16-cv-3591-AT** |
| **v.** | ) | |
| | ) | |
| **LAPTOP & DESKTOP REPAIR** | ) | |
| **LLC,** | ) | |
| **A Nevada Limited Liability** | ) | |
| **Company, also** | ) | |
| **d/b/a cashforiphones.com,** | ) | |
| **cashforlaptops.com, ecyclebest.com,** | ) | |
| **smartphonetraders.com, sell-your-** | ) | |
| **cell.com; and VADIM OLEGOVICH** | ) | |
| **KRUCHININ, also a/k/a Vadim** | ) | |
| **Kruchinin, David Kruchinin, David** | ) | |
| **Vadim Kruchinin, Dave Kruch, as the** | ) | |
| **owner and an officer of Defendant** | ) | |
| **Laptop & Desktop Repair, LLC,** | ) | |

**Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2018, I electronically filed *Final Report by Receiver and Motion for an Order (a) Approving Accounting; (b) Authorizing Reserve, Payment of Administrative Expenses and Professional Fees and Costs, and Final Disbursements; (c) Authorizing the Abandonment of Remaining Records, Assets and 401K Plan; and (d) Discharging and Releasing Receiver and Closing*

*Receivership and Memorandum in Support Thereof* with the Clerk of the Court using *CM/ECF*. I also certify that the foregoing documents were served on all parties and the persons identified below via transmission of Notice of Electronic Filing generated by *CM/ECF* as set forth below. The foregoing Motion will also be served on other creditors and parties in interest via first class mail and a supplemental certificate of service will be filed with this Court upon completion of that additional service.

Anna Mirshak Burns
Hans Christian Clausen
Federal Trade Commission-ATL
Atlanta Regional Office
Suite 1500
225 Peachtree Street, NE
Atlanta, GA 30303-1729
*Via ECF*

Jacquelyn L. Kneidel, Esq.
Assistant Attorney General
Consumer Protection Unit
2 Martin Luther King, Jr. Drive, S.E.
Suite 870, East Tower
Atlanta, GA 30334-4900
*Via ECF*

　　　　This the 24th day of May, 2018.

　　　　　　　　　　　　*/s/ Henry F. Sewell, Jr.*
　　　　　　　　　　　　Henry F. Sewell, Jr.
　　　　　　　　　　　　Georgia Bar No. 636265
　　　　　　　　　　　　Counsel for the Receiver